United States District Court
Southern District of Texas
**ENTERED**
September 18, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARTHUR  ROBERTS II, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:20-CV-93 |
| | § | |
| LT. FUENTES, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CASE

Plaintiff Arthur Roberts, II is a Texas inmate appearing *pro se* and *in forma pauperis*.  He filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act.  *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A.

For purposes of screening, the undersigned respectfully recommends that Plaintiff's complaint be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for the reasons set forth below.  The undersigned respectfully recommends further that the dismissal of this case counts as a "strike" for purposes of 28 U.S.C. § 1915(g).[1]  Lastly, the undersigned respectfully recommends that Plaintiff's Motion for Temporary Restraining Order (TRO) and Preliminary Injunction (D.E. 17) be **DENIED**.

---

[1] Plaintiff is **WARNED** that if he accumulates three strikes, he will not be allowed to proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury.  *See* 28 U.S.C. § 1915(g).

## I.      JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.     PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID).  Plaintiff was convicted of aggravated sexual assault in Tarrant County and was sentenced on March 23, 2017 to life in prison. Plaintiff's claims and allegations in this action arise in connection with his assignment to the McConnell Unit in Beeville, Texas.

In his original complaint and More Definite Statement, Plaintiff names the following defendants: (1) Warden Sifuentes[2]; (2) Warden C. Furr; (3) Warden G. Miller; (4) Warden D. Fernandez; (5) Warden Richardson; (6) TDCJ Executive Director Bryan Collier; (7) Dale Wainwright, Texas Board of Criminal Justice; (8) Officer Megan R. Thompson; (9) Lt. Javier Muro; (10) Capt. Ray A. Guevara; (11) Capt. Cody A. Wolfrum; and (12) Senior Practice Manager Tanya Lawson.  (D.E. 1, 9).  Plaintiff sues each defendant in his or her individual and official capacity.  Plaintiff seeks declaratory, injunctive, and monetary relief.

---

[2] Plaintiff improperly listed this defendant's last name as "Fuentes."

A *Spears*[3] hearing was conducted on June 16, 2020. The following representations were made either at the *Spears* hearing or in Plaintiff's Original Complaint and More Definite Statement (D.E. 1, 16):  When Plaintiff was confined in Tarrant County, he was brought to the North Texas State Hospital which is a mental health facility.  (D.E. 14, pp. 16-17).  While at the hospital, he was prescribed a psychotropic medication.  According to Plaintiff, "great doctors at [the hospital] … cleared [him]" because he "was fine." (D.E. 14, pp. 17-18).

Plaintiff arrived at the McConnell Unit on May 15, 2017.  (D.E. 14, p. 4).  Plaintiff alleges he has suffered psychological, neurological, and physical torture since arriving at the McConnell Unit.  Other than gaining weight, however, Plaintiff did not identify any physical or medical condition.   (D.E. 14, p. 6).   Plaintiff, nevertheless, has been prescribed medication which "has a side effect of death."  (D.E. 14, p. 18).

In February 2020, Plaintiff's custody classification was upgraded from G5 to G4. At the time of the *Spears* hearing, Plaintiff's custody classification remained at G4, which generally means that he is allowed out of his cell four-to-five hours a day.  (D.E. 14, pp. 8-9).  However, the McConnell Unit is currently on lockdown due to Covid-19 concerns.

Plaintiff believes that Warden Sifuentes is the ringleader of the TDCJ's Mexican Mafia Gang.  Plaintiff believes that Warden Sifuentes was once arrested and indicted for scamming the American tax payers and raping the judicial system of funds.  According to

---

[3] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

Plaintiff, Warden Sifuentes defied a federal judge's order to use funds for air conditioners, which caused the heat-related death of several prisoners.  Warden Sifuentes then stole tax-payer money and funded a "Mexican Mafia lead invasion agenda."  (D.E. 9, p. 3).  Plaintiff further alleges the law library was shut down under Warden Sifuentes' watch which denied inmates the opportunity to research and uncover evidence of Warden Sifuentes' criminal behavior.

Plaintiff alleges Warden Sifuentes utilized TDCJ resources to engage in espionage and money laundering. Plaintiff claims that by operating the McConnell Unit as a criminal enterprise with a toxic atmosphere, Warden Sifuentes violated Plaintiff's constitutional rights through deliberate indifference and retaliation.   Plaintiff has witnessed many torturous acts at the McConnell Unit.   According to Plaintiff, Warden Sifuentes is "legally responsible because of his position, and most of the chaos and the torture happened on his watch, so to speak."  (D.E. 14, p. 19).

Plaintiff claims he was subjected to a campaign of harassment and became a victim under Warden Sifuentes' criminal behavior.  Because he was unable to purchase stamps, Plaintiff alleges he was denied access to the courts in his effort to assert a nonfrivolous claim attacking his underlying conviction.   Plaintiff believes Warden Sifuentes' mafia gang remains intact and that he is at risk of suffering serious harm, being denied access to courts, and having his legal materials destroyed.

Plaintiff states that from April 10, 2018 through January 20, 2020, he filed numerous complaints and/or grievances with the TDCJ regarding the conduct of Warden Sifuentes. Plaintiff's grievances and complaints, however, have all been denied.  Plaintiff

claims that Warden Sifuentes' actions have caused him to be: (1) subjected on multiple occasions to death gas and other chemical agents that attack Plaintiff's nervous system; (2) subjected to a continuous stream of psychological torture episodes by TDCJ prison officials; and (3) forced to take medications "with the side effects of death" to cope with his psychological injuries.

Plaintiff alleges Warden Furr also participated in a campaign of harassment against Plaintiff, denied him access to the courts by preventing him from purchasing stamps, and otherwise violated his rights through his leadership and command. Plaintiff also complains about Warden Furr's actions in denying his various grievances where Plaintiff complained about his denial of access to the courts and inability to purchase stamps. Plaintiff claims that Warden Furr's actions caused him great stress and psychological torture as well as the loss of the ability to challenge his conviction on appeal.

Plaintiff alleges Warden Miller is also a member of the Mexican Mafia and that he participated in a campaign of harassment against Plaintiff, denied him access to the courts by preventing him from purchasing stamps, and otherwise violated his rights through his leadership and command. Plaintiff complains about Warden Miller's actions in denying his various grievances where Plaintiff complained about his denial of access to the courts. Plaintiff claims Warden Miller's decisions pertaining to the denial of some of Plaintiff's grievances impacted Plaintiff's ability to comply with court deadlines and challenge his conviction.

Plaintiff complains about Warden Fernandez's actions in denying his various grievances where Plaintiff complained about the annual lockdown.  The annual lockdown led to Plaintiff's inability to purchase stamps.  Warden Fernandez's actions allegedly hindered Plaintiff's ability to access the courts and assert a nonfrivolous claim.

Plaintiff complains about Warden Richardson's denial of Plaintiff's grievance where Plaintiff claimed that officials were tampering with government records and were psychologically torturing Plaintiff.  Warden Richardson also denied a grievance where Plaintiff complained about the denial of his access to the courts.

Plaintiff claims Executive Director Collier is legally responsible for the actions of the wardens and all the illegal acts they have committed.  Plaintiff filed a complaint with the TDCJ's Health Services Division to try to solve the issues at the McConnell Unit. This complaint was denied, which according to Plaintiff, constitutes deliberate indifference.  Plaintiff alleges in a conclusory manner that Executive Director Collier is responsible for this decision.

Plaintiff lists several actions to show that inmates are psychologically tortured by the wardens of the McConnell Unit with the purpose of funding the Mexican Mafia. Plaintiff believes that Executive Director Collier is responsible for training these wardens to torture and deny prisoners their constitutional rights.

Plaintiff claims Chairman Wainwright operates a criminal enterprise which allows for "foreign enemy wardens" to commit tortious and unconstitutional acts. Plaintiff filed a complaint with the Texas Board of Criminal Justice complaining about being sexually abused.  Chairman Wainwright allegedly acted with deliberate indifference to Plaintiff's

complaint and has further committed criminal activity by misleading "the people" and robbing the American tax payer.  Plaintiff argues Chairman Wainwright should be held responsible for failing to properly oversee the corrupt wardens from the Mexican Mafia.

Plaintiff alleges Officer Thompson filed a false disciplinary case against Plaintiff on December 28, 2017 for assaulting her in retaliation for Plaintiff seeking legal help from other prisoners.  Plaintiff refers to this event as the "Thompson Episode."  (D.E. 14, pp. 12, 22).  Plaintiff was found guilty, and his classification level was dropped to G5.  The disciplinary action led to Plaintiff being denied access to the law library for 365 days (due to placement in solitary confinement).  Plaintiff claims these circumstances amount to the unconstitutional denial of his access to the courts.

During the time that Plaintiff was in solitary confinement, he attempted to challenge his state conviction through a state habeas petition.  (D.E. 14, p. 23).  Plaintiff indicated that he was able to file his state habeas petition but that it was denied in a written order without any reasons provided.  (D.E. 14, p. 24).

Plaintiff alleges Officer Thompson interfered with Plaintiff's ability to file this § 1983 complaint by denying Plaintiff's request for a certificate of his inmate trust fund account.  Plaintiff testified at the *Spears* hearing that Officer Thompson interfered with his ability to obtain this important information which was necessary to demonstrate his *in forma pauperis* status.  Plaintiff alleges generally that Officer Thompson has participated in a campaign of harassment against Plaintiff.

According to Plaintiff, Lt. Muro is a verified member of the Mexican Mafia.  Plaintiff testified that Lt. Muro "is a lynch man for the Juggalo criminal organization

gang" and operates for the benefit of the Mexican Mafia agenda.   (D.E. 14, p. 27).

Plaintiff claims Lt. Muro has sexually harassed female officers and committed other

criminal conduct such as suppressing evidence in a sexual assault complaint involving a

high-ranking TDCJ official.   Plaintiff claims Lt. Muro failed to allow Plaintiff to submit a

written statement in one disciplinary action brought against him.   Plaintiff further alleges

Lt. Muro psychologically tortured Plaintiff by calling him the n-word at that disciplinary

hearing.

Plaintiff alleges he has had several false disciplinary cases brought against him.

None of these disciplinary cases has been overturned on appeal or reversed through a

habeas corpus action.   (D.E. 14, p. 14).   Whenever a false disciplinary case is brought

against Plaintiff, it prevents him from acquiring important court papers.    In addition, Lt.

Muro participates as the disciplinary hearing officer (DHO).   Plaintiff alleges Lt. Muro

lets stand disciplinary cases brought against him by subordinate officers even when those

cases lack merit.

Plaintiff alleges Capt. Guevara sexually harassed Plaintiff by threatening Plaintiff

to perform a lewd act on him in order to avoid getting a disciplinary action filed against

Plaintiff.   (D.E. 14, p. 31). Capt. Guevara reportedly then brought a false disciplinary

action against Plaintiff for refusing to obey an order and hand over a pen to Capt.

Guevara.   (D.E. 14, pp. 32-33).   According to Plaintiff, Capt. Guevara brought this case

to cover up his crimes of sexual harassment and abuse. Plaintiff was found guilty and

placed in solitary confinement.   This placement interfered with Plaintiff' ability to

purchase stamps so that he could file a response in his  state habeas case.

Plaintiff further complained about having his ID card stolen on multiple occasions. When this happens, it takes three to four weeks to get a replacement ID card, during which time Plaintiff is unable to buy stamps or other legal materials to participate in litigation.  Plaintiff testified that he currently has his ID card.

Plaintiff alleges Capt. Wolfrum was the chief architect of the illegal activity at the McConnell Unit. Plaintiff believes that Capt. Wolfrum is a member of the KKK due to his racist actions.  On November 10, 2018, Capt. Wolfrum reportedly retaliated against Plaintiff by suppressing evidence relating to Plaintiff's grievance that "death gas" was being used against him.  Plaintiff further claims Capt. Wolfrum retaliated by bringing a false disciplinary case against Plaintiff.  This disciplinary case, in turn, led to Plaintiff being unable to purchase stamps and access the courts in connection with "time-based litigation."

Plaintiff complains that he is being subjected to torture, which is impacting his psychological and neurological health.  According to Plaintiff, Practice Manager Lawson, while being aware of Plaintiff's complaints/grievances, has refused to help Plaintiff become free of torture and instead has participated in the torture program.  On December 18, 2018, Plaintiff filed a grievance concerning an episode where he was subjected to death nerve gas through the use of force.  This grievance, as well as possibly other grievances concerning gas attacks on Plaintiff, was denied by Practice Manager Lawson.

## III.   LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint

frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation.  *Twombly*, 550 U.S. at 555.  As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed.  *Id*.

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law.  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).  A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties.  *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

## IV.    DISCUSSION

### A.    Eleventh Amendment Immunity and Official Capacity

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Eleventh Amendment, however, bars claims for money damages against a state or state agency.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998).  As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  The Fifth Circuit has extended the Eleventh

Amendment immunity specifically to TDCJ officers and officials acting in their official capacities.  *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent that Plaintiff sues Defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment.  Thus, it is respectfully recommended that Plaintiff's claims for money damages against Defendants in their official capacities be dismissed as barred by the Eleventh Amendment.

### B.     Baseless and Irrational Allegations

Plaintiff alleges that: (1) he has suffered psychological, neurological, and physical torture since arriving at the McConnell Unit; (2) he has been prescribed medication which "has a side effect of death"; (3) Warden Sifuentes is the ringleader of the TDCJ's Mexican Mafia Gang; (4) rather than use tax-payer funds and comply with court orders to use funds for air conditioners, Warden Sifuentes has instead funded a "Mexican Mafia lead invasion agenda"; (5) Warden Sifuentes utilized TDCJ resources to engage in espionage and money laundering; (6) the actions of Warden Miller has caused Plaintiff to be subjected on multiple occasions to death gas, other chemical agents to attack Plaintiff's nervous system, and a continuous stream of psychological torture episodes by TDCJ prison officials; (7) Warden Miller also is a member of the Mexican Mafia and has caused harm to Plaintiff; (8) inmates are psychologically tortured by the wardens of the McConnell Unit with the purpose of funding the Mexican Mafia; (9) Executive Director Collier is responsible for training these wardens to torture prisoners; (10) Chairman

Wainwright operates a criminal enterprise which allows for corrupt wardens who work for the Mexican Mafia to commit tortious and unconstitutional acts; (11) Lt. Muro is a verified member of the Mexican Mafia and "is a lynch man for the Juggalo criminal organization gang"; (12) Capt. Wolfrum, who is a member of the KKK, was the chief architect of the illegal activity at the McConnell Unit; and (13) Practice Manager Lawson, while being aware of Plaintiff's complaints/grievances, has refused to help Plaintiff become free of torture and instead has participated in the torture program.

Plaintiff's allegations relating to involvement and membership by many of the named Defendants in the Mexican Mafia are irrational and nonsensical.  In addition, Plaintiff fails to present a logical and coherent set of allegations to support any of his claims that he is being subjected to psychological, emotional or physical torture at the hands of these defendants or is otherwise being subjected to death gas or other chemical agents.  Because these claims consist of irrational, baseless, and wholly incredible allegations, the Court is not bound to accept his allegations as true.  *See Denton v. Hernandez,* 504 U.S. 25, 33 (1992) (explaining that allegations must be accepted as true, unless they are clearly irrational, baseless, or wholly incredible).  Accordingly, the undersigned respectfully recommends that Plaintiff's claims against Defendants, related to their involvement in the Mexican Mafia and their actions in subjecting Plaintiff to physical, emotional, and psychological torture, be dismissed as frivolous.  *See Henry v. Kerr County, Texas*, No. SA-16-CV-284, 2016 WL 2344231 *3 (W.D. Tex.—San Antonio, May 2, 2016) (explaining that "[a] court may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless, fanciful, fantastic, delusional, or

otherwise rise to the level of the irrational or the wholly incredible") (citing *Denton*, 504 U.S. at 32-33).

### C.    Supervisory Liability

In addition to the irrational and nonsensical allegations discussed above, Plaintiff appears to sue Warden Sifuentes, Warden Furr, Warden Miller Warden Fernandez, Warden Richardson, Executive Director Collier, and Chairman Wainwright in their supervisory capacities. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983).  There is no vicarious or *respondeat superior* liability of supervisors under section 1983.  *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987).  *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

"Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).  "Mere knowledge and acquiescence on a supervisor's part is insufficient to create supervisory liability under § 1983." *Doe v. Bailey*, No. H-14-2985, 2015 WL 5737666, at *9 (S.D. Tex. Sep. 30, 2015) (citing *Iqbal*, 556 U.S. at 677).

 Accepting Plaintiff's allegations as true, they reflect Plaintiff's belief that these supervisory defendants should be held responsible for the conduct committed by subordinate officials at the McConnell Unit. While suggesting that Defendants Sifuentes, Furr, Miller, Fernandez, Richardson, Collier, and Wainwright had knowledge of

Plaintiff's various complaints and grievances through their leadership position and via the grievance process, Plaintiff alleges nothing to suggest that these defendants had any personal involvement in such matters.   Plaintiff, therefore, has failed to allege any plausible claims against Defendants Sifuentes, Furr, Miller, Fernandez, Richardson, Collier, and Wainwright in their roles as supervisory officials.

Plaintiff offers several allegations against Defendants Furr, Miller, Fernandez, and Richardson that center on his dissatisfaction with their decisions to reject Plaintiff's various grievances.   Such allegations, however, fail to state a cognizable constitutional claim.   *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 138 (1977) (Burger, C.J., concurring) (applauding institution of grievance procedures by prisons but noting that such procedures are not constitutionally required); *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005) (prisoners do not have a federally protected liberty interest in having grievances investigated, let alone resolved in their favor); *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007) (holding that the plaintiff had no actionable § 1983 claim based on prison officials' failure to process his grievances because he had no protected liberty interest in the processing of grievances).

Accordingly, it is respectfully recommended that Plaintiff's claims against Defendants Sifuentes, Furr, Miller, Fernandez, Richardson, Collier, and Wainwright be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### D.    Due Process

Liberally construed, Plaintiff claims that his due process rights were violated in connection with the filing of disciplinary cases against Plaintiff.   Plaintiff alleges that: (1)

on December 28, 2017, Officer Thompson filed a false disciplinary case against Plaintiff for assaulting her in retaliation for Plaintiff seeking legal help from other prisoners; (2) Plaintiff was found guilty, and his classification level was dropped to G5; (3) Plaintiff has had several false disciplinary cases brought against him; (4) none of these disciplinary cases has been overturned on appeal or reversed through a habeas corpus action; and (5) Lt. Muro participates as the DHO in these hearings and lets stand all false disciplinary cases brought against him by subordinate officers.

The Supreme Court has held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]."  *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).  "It is well-settled under *Heck* that a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that 'violation arose from the same facts attendant to the charge for which he was convicted . . . .'"  *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008) (quoting *Heck*, 512 U.S. at 486-87).  The *Heck* doctrine also operates to bar prisoners from seeking injunctive relief or otherwise challenging the punishment imposed by a disciplinary proceeding through a § 1983 action.  *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) ("[plaintiff's] claim for declaratory relief and money damages, based on allegations ... that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983"); *Clarke v. Stalder*, 154 F.3d 186, 189-91 (5th Cir. 1998) (en banc) (applying *Heck* to bar plaintiff's

constitutional claims for injunctive relief that were fundamentally intertwined with his request for restoration of good-time credits).

Granting Plaintiff relief as to his due process claims would necessarily imply the invalidity of any punishments imposed by Lt. Muro or any other DHO in his disciplinary proceedings. Plaintiff's testimony reflects that none of his disciplinary convictions for which he was sanctioned have been overturned on appeal or set aside in a habeas corpus proceeding.  Because Plaintiff has not successfully had any of these disciplinary decisions set aside, he cannot seek any relief in this case with respect to his due process claims.  Thus, it is respectfully recommended that Plaintiff's due process claims against Officer Thompson and Lt. Muro be dismissed as frivolous and/or for failure to state a claim for relief.

### E.     Access to Courts

Throughout his pleadings and at the *Spears* hearing, Plaintiff claims he was denied access to the courts.  Prisoners have a constitutionally protected right of access to the courts.  *See Lewis v. Casey*, 518 U.S. 343, 360 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)).  The right does not guarantee any "particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  *Lewis*, 518 U.S. at 356.  *See also Jones*, 188 F.3d at 325 (the right provides a reasonable opportunity to file nonfrivolous legal claims challenging convictions or conditions of confinement).

Because the right of access is not a "freestanding right," to state a cognizable First Amendment claim, the plaintiff must demonstrate actual injury resulting from an alleged

denial of access to the courts. *Lewis,* 518 U.S. at 351; *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999). Without a showing of an actual injury, a plaintiff lacks standing to pursue a claim of denial of access to the courts. *Lewis*, 518 U.S. at 349.

To meet the standing requirement, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Plaintiff "must establish that he has a personal stake in the alleged dispute and that the alleged injury suffered is particularized as to him." *Id.* at 819. In particular, to succeed on a claim of denial of access to courts, a plaintiff must show that he lost an actionable or nonfrivolous claim or was prevented from presenting such a claim because of the alleged denial. *See Lewis*, 518 U.S. at 356. He must show "that his position as a litigant was prejudiced" as a direct result of the denial of access. *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996).

Plaintiff claims that several defendants engaged in numerous actions to hinder his ability to file a state habeas action challenging his underlying conviction. Specifically, Plaintiff alleges that: (1) several defendants denied Plaintiff's grievances and found him guilty in numerous disciplinary cases which impacted Plaintiff's ability to purchase stamps; (2) several defendants ordered the McConnell Unit to be placed on its annual lockdown, which also led to Plaintiff's inability to purchase stamps; (3) after Plaintiff was found guilty in the disciplinary case brought by Officer Thompson on December 28, 2017, he was denied access to the law library for 365 days due to his placement in solitary confinement; (4) after Plaintiff was found guilty in the disciplinary case brought

by Capt. Guevara and placed in solitary confinement, Plaintiff was unable to purchase stamps so that he could file a response in his state habeas case; (5) whenever Plaintiff's ID card was stolen, he was unable to purchase stamps or other legal materials to participate in litigation until he was given a new ID card; (6) after Plaintiff was found guilty in a false disciplinary case brought by Capt. Wolfrum, Plaintiff was unable to purchase stamps and access the courts in connection with "time-based litigation"; and (7) Plaintiff's inability to purchase stamps on numerous occasions prevented him from accessing the courts and asserting a non-frivolous claim attacking his underlying conviction.

As part of his *Spears* hearing testimony, Plaintiff acknowledged that he was able to file his state habeas petition but that it was denied in a written order without any reasons provided. (D.E. 14, p. 24). Accepted as true, therefore, Plaintiff' allegations fail to state a plausible First Amendment claim for denial of access to the courts. Plaintiff provides no facts to suggest that he missed any filing deadlines with regard to his state habeas petition or that his state habeas case was dismissed on some procedural ground relating to his inability to prosecute the case. Plaintiff otherwise fails to identify any specific nonfrivolous or actionable claim that he was prevented from asserting before the state habeas court.

Plaintiff further alleges that Officer Thompson interfered with Plaintiff's ability to file this § 1983 complaint by denying Plaintiff's request for a certificate of his inmate trust fund account. A review of Court records reflects, however, that Plaintiff was granted leave to proceed *in forma pauperis* and has successfully been able to file various

pleadings, motions, and documents in this action. Accepted as true, Plaintiff's allegations fail to state a plausible First Amendment claim for denial of access to the court based on Officer Thompson's actions.

Accordingly, it is respectfully recommended that Plaintiff's First Amendment claims for denial of access to the courts be dismissed as frivolous and/or for failure to state a claim for relief.

### F.      Verbal and Sexual Harassment

Plaintiff claims that he has been subjected to a general campaign of verbal harassment as well as racial and sexual harassment. It is well settled that crude, unprofessional, or harassing remarks, even verbal threats by prison staff to an inmate, do not rise to the level of a constitutional violation. *Field v. Corr. Corp.*, 364 F. App'x 927, 930 (5th Cir. 2010). *See also Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002) (holding that "claims of verbal abuse are not actionable" constitutional claims); *Robertson v. Plano City of Texas*, 70 F.3d 21, 24 (5th Cir. 1995) (concluding that verbal threats do not rise to the level of a constitutional violation); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1991) (*citing Bender v. Brumley,* 1 F.3d 271 (5th Cir. 1993)) ("It is clear that verbal abuse by a prison guard does not give rise to a cause of action under Section 1983."). Thus, to the extent that Plaintiff complains about general verbal harassment from any prison official at the McConnell Unit, he has failed to state an actionable constitutional claim.

A more serious allegation is that Plaintiff claims Lt. Muro psychologically tortured Plaintiff by calling him the n-word at one of Plaintiff's disciplinary hearing. Accepting Plaintiff's allegation as true, Lt. Muro's remark to Plaintiff is certainly abusive and reprehensible. Courts have held, however, that a derogatory remark such as a racial slur does not constitute an actionable constitutional violation. *Verdin v. Larpenter*, No. 19-12965, 2020 WL 1905287, at *10 (E.D. La. Jan. 27, 2020); *Tobias v. Brown*, No. H-17-1757, 2019 WL 5788135, at *8 (S.D. Tex. Nov. 6, 2019) (citing *Robertson*, 70 F.3d at 24); *Talton v. Ellis County Sheriff's Office*, No. 3:13-cv-4571, 2014 WL 2980756, at *4 (N.D. Tex. Jul. 2, 2014) (citing *Bender*, 1 F.3d at 274 n.4). *See also Gray v. Rodriguez*, No. A-10-CA-874, 2011 WL 251233, at *4 (W.D. Tex. Jan. 26, 2011) (holding that there was no actionable constitutional claim based on the prisoner's allegation that a prison official called him the n-word). Plaintiff, therefore, fails to state an actionable constitutional claim based on Lt. Muro's racial slur. The undersigned makes this recommendation, in part, based on the context of this case in that most of Plaintiff's claims are wholly unbelievable and clearly frivolous.

Next, while referencing sexual abuse in general, Plaintiff specifically alleges that Capt. Guevara sexually harassed Plaintiff by commanding Plaintiff to "suck [his] dick" in order to avoid getting a disciplinary action filed against Plaintiff. (D.E. 14, p. 31). The Fifth Circuit has recognized that prisoners have a constitutional right to bodily privacy, but this right is "minimal at best." *Tuft v. Texas,* 410 F. App'x 770, 776 (5th Cir. 2011) (citing *Oliver v. Scott,* 276 F.3d 736, 745 (5th Cir. 2002)). As such, prisoners lose "those

rights that are necessarily sacrificed to legitimate penological needs." *Tufts*, 410 F. App'x at 776 (citing *Elliott v. Lynn*, 38 F.3d 188, 190–91 (5th Cir. 1994)).

However, sexual abuse of a prisoner by prison officials may violate the prisoner's right to be free of cruel and unusual punishment under the Eighth Amendment. *See Boddie v. Schnieder*, 105 F.3d 857, 860–61 (2d Cir. 1997). Sexual assault violates the Eighth Amendment only if it meets a two-part test consisting of an objective element and a subjective element. First, the sexual abuse or assault must be objectively, sufficiently serious; second, the prison officials involved must have a sufficiently culpable state of mind. *See Boddie*, 105 F.3d at 861. The sexual abuse must be "severe or repetitive" to rise to the level of an Eighth Amendment violation. *See Boddie*, 105 F.3d at 861. "A single incident of sexual abuse, if sufficiently severe or serious, may violate an inmate's Eighth Amendment rights no less than repetitive abusive conduct." *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d 2015).

Accepted as true, Plaintiff's allegations fail to state an Eighth Amendment sexual assault claim. Plaintiff makes no allegations to suggest that any sexual contact occurred between him and Capt. Guevara or that either Plaintiff's or Capt. Guevara's genitalia was exposed. While Capt. Guevara's alleged conduct, if true, was verbally abusive, unprofessional, and reprehensible, it falls short of stating a constitutional claim. *See Copeland v. Numan*, 250 F.3d 743, 2001 WL 274738, at *3 (5th Cir. Feb. 21, 2001) (citing *Boddie*, 105 F.3d at 861).

Accordingly, it is respectfully recommended that Plaintiff's claims based on verbal, racial, and sexual harassment be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### G.   Retaliation

Plaintiff claims that he has been subjected to incidence of retaliation.  Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights.  *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972).  Retaliation is actionable "only if the retaliatory act 'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'"  *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006)).

The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights.  *Morris*, 449 F.3d at 686.  Thus, "[a] prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct."  *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995).  "Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities, and prison officials may not retaliate against inmates for engaging in such protected inmates."  *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009) (citing *Morris*, 449 F.3d at 684).

The Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts."  *Adeleke v.*

*Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166). In addition, the Fifth Circuit has concluded that some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Morris*, 449 F.3d at 686. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.*

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones*, 188 F.3d at 324-25 (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). "Mere conclusory allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim." *Jones*, 188 F.3d at 325. The inmate must produce direct evidence of motivation or a chronology of events from which retaliation may be inferred. *Id.* In other words, a successful claim of retaliation requires a showing that, but for some retaliatory motive, the complained of adverse incident would not have occurred. *Woods*, 60 F.3d at 1166.

Plaintiff claims that, on December 28, 2017, Officer Thompson filed a false disciplinary case against Plaintiff for assaulting her in retaliation for Plaintiff seeking legal help from other prisoners. As discussed above, "the invocation of a specific constitutional right is the first element of a retaliation claim." *Williams v. Sellers*, No. H-11-4287, 2014 WL 794191, at *11 (S.D. Tex. Feb. 26, 2014). Plaintiff has not

established that the disciplinary case has been overturned or otherwise invalidated. Therefore, this claim cannot survive the *Heck* doctrine. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). As stated above, the *Heck* doctrine operates to bar prisoners from challenging the punishment imposed by a disciplinary proceeding through a § 1983 action unless the disciplinary proceeding is overturned or otherwise invalidated. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997).

Furthermore, Plaintiff primarily relies on his personal belief that Officer Thompson retaliated by filing a false disciplinary case and not on specific facts setting forth a coherent chronological series of events where retaliation can be inferred. Accordingly, the undersigned recommends that Plaintiff's retaliation claim against Officer Thompson be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

Plaintiff further claims that, on November 10, 2018, Capt. Wolfrum retaliated against Plaintiff by suppressing evidence relating to Plaintiff's grievance that "death gas" was being used against him and by bringing a false disciplinary case against Plaintiff. As compared his retaliation claim against Officer Thompson Plaintiff's retaliation claim references Capt. Wolfrum's actions following the filing of a grievance.

Accepting Plaintiff's allegations as true, however, they merely reflect his personal belief he was the victim of retaliation and not on specific facts setting forth a coherent chronological series of events where retaliation can be inferred. At best, Plaintiff's allegations suggest a temporal proximity between the time Plaintiff filed his grievance and the actions undertaken by Capt. Wolfrum in suppressing certain evidence and

bringing a disciplinary case against Plaintiff.  Such temporal proximity alone, however, is insufficient to state "but for" causation in a retaliation claim. *Reese*, 322 F. App'x at 383. Accordingly, it is respectfully recommended that Plaintiff's retaliation claims against Capt. Wolfrum be dismissed as frivolous and/or for failure to state a claim for relief.

### H.    Medical Grievances

Plaintiff complains that Practice Manager Lawson has refused to provide him with help in connection with his many grievances complaining about the impact on his psychological and neurological health through the torture committed by prison officials. He further complains about the actions of Practice Manager Lawson in denying his grievances concerning his complaints about being subjected to death nerve gas.

As discussed above, Plaintiff's claims against Practice Manager Lawson consist of irrational, baseless, and wholly incredible allegations which the Court is not bound to accept as true.  *See Denton,* 504 U.S. at 33.  To the extent that Plaintiff's allegations reflect his dissatisfaction with the actions taken by Practice Manager Lawson in rejecting Plaintiff's grievances, they fail to state a cognizable constitutional claim.  *See Geiger,* 404 F.3d at 374.  Accordingly, the undersigned recommends that Plaintiff's claims against Practice Manager Lawson be dismissed as frivolous and/or for failure to state a claim.

### I.   Motion for TRO and Preliminary Injunction

Plaintiff has filed a motion seeking either a TRO or preliminary injunctive relief. (D.E. 17).  In a Declaration filed along with his motion, Plaintiff states that he is being subjected to physical, neurological, and psychological torture which is resulting in the

violation of his constitutional rights in many respects.  (D.E. 19).  Plaintiff feels that preliminary injunctive relief is necessary or else he will suffer irreparable injury.  He asks the Court to direct Defendants and their agents to cease acting in concert to deny Plaintiff his constitutional rights.  (D.E. 17, p. 1).

> A party may obtain a TRO without notice to the other side if:
>
> (A)   specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B)   the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

Plaintiff has alleged no facts either in his motion showing that "immediate and irreparable injury, loss, or damage will result" before Defendants can be heard in this case.  He further provides no written certification of any efforts made to give notice or proffer any reasons why notice should not be required.   Plaintiff's TRO request, therefore, is without merit.

Plaintiff's motion seeking preliminary injunctive relief also is without merit.  In order to obtain a preliminary injunction under Federal Rule of Civil Procedure 65, the movant must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Texans for Free Enterprise v. Texas Ethics Com'n*, 732 F.3d 535, 536-37 (5th Cir. 2013).  Injunctive relief

is an extraordinary remedy which requires the movant to unequivocally show the need for its issuance. *Sepulvado v. Jindal,* 729 F.3d 413, 417 (5th Cir. 2013) (internal citations and quotations omitted). Plaintiff must carry the burden as to all four elements before a preliminary injunction may be considered. *Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (internal quotations and citations omitted).

Plaintiff's motion fails to warrant the extraordinary remedy of a preliminary injunction. Plaintiff has failed to show a substantial likelihood of success on any of the claims asserted by him in this action. Plaintiff further has failed to demonstrate a substantial threat of an irreparable injury. His conclusory allegations of potential harm do not amount to a constitutional violation, and in the absence of such a violation, federal courts are reluctant to interfere in the internal affairs of a state prison. *See Richie v. UTMB Hospital Galveston*, No. 2:12-CV-322, 2012 WL 12871940, at *2 (S.D. Tex. Oct. 18, 2012) (citing *Kahey v. Jones*, 836 F.2d 948, 950 (5th Cir. 1988)). Accordingly, the undersigned respectfully recommends that Plaintiff's Motion for TRO and Preliminary Injunction (D.E. 17) be denied.

## V. RECOMMENDATION

Because Plaintiff has failed to state a cognizable constitutional claim in this action against Defendants, it is respectfully recommended that Plaintiff's complaint be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim for relief pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). It is respectfully recommended further that this dismissal count as a "strike" for purposes of 28 U.S.C. § 1915(g), and that the Clerk of Court be **INSTRUCTED** to send notice of this dismissal to the Manager

of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov. Lastly, it is respectfully recommended that Plaintiff's Motion for TRO and Preliminary Injunction (D.E. 17) be **DENIED**.

Respectfully submitted this 18th day of September 2020.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).